IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AGAPITO SÁNCHEZ-MEDINA, et al.,

Plaintiffs

v.                                                     CIVIL 07-1880 (DRD) (JA)

UNICCO SERVICE COMPANY, et al.,

Defendants

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on motion for summary judgment filed by the defendant, Chesebrough Ponds' Manufacturing Company, a/k/a Unilever de Puerto Rico, on September 28, 2009.  (Docket No. 52.)  Plaintiffs, Agapito Sánchez-Medina, his wife Lizel Maritza López-Mestre and the conjugal partnership composed by them, opposed the defendant's motion on November 13, 2009. (Docket No. 63.)  This matter was referred to me for report and recommendation on April 16, 2010.  (Docket No. 91.)  For the reasons set forth below, I recommend that the defendant's motion for summary judgment be GRANTED.

I.  FACTUAL BACKGROUND AND PROCEDURAL BACKGROUND

The defendant, Chesebrough, is a corporation authorized to conduct business in the Commonwealth of Puerto Rico and is dedicated to the manufacture of personal hygiene products, known as Q-Tips.  (Docket No. 54-2, at 1-2, ¶ 3.) Plaintiff, Mr. Agapito Sánchez-Medina, was employed by Chesebrough on January

CIVIL 07-1880 (DRD) (JA)                    2

28, 1985,[1] to work at its plant in  Las Piedras, Puerto Rico.  (Docket No. 54, at 2, ¶ 5 & Docket No. 54-4.)  In May 2005, Chesebrough notified Mr. Sánchez and all of its other employees of its plan to restructure its plant operations to lower costs. The restructure entailed consolidating and outsourcing the site's maintenance, safety and cleaning services to Unicco Service Company ("Unicco"), a company dedicated to providing maintenance services to contractor equipments and facilities.  (Docket No. 54-2, at 2-3, ¶¶ 6-8; Docket No. 54-7 & Docket No. 54-8.) The plan became effective on June 1, 2005, and as a result a number of positions were eliminated and the incumbent employees were laid off, including Mr. Sánchez who was terminated on June 1, 2005.  (Docket No. 54-2, at 3, ¶ 8; Docket No. 54-4 & Docket No. 54-11.)  Laid off employees like Mr. Sánchez were given the option of:  (1) participating in the recruitment process with Unicco, or (2) continuing employment with Chesebrough but at a lower level, occupying vacant positions.  (Docket No. 54-2, at 3, ¶ 8 & Docket No. 54-10.)

On May 4, 2005. Mr. Sánchez completed an employment application with Unicco.  (Docket No. 54-12 & Docket No. 54-5, at 5:16-18 & at 6:1-8.)  On May 18, 2005, Unicco extended an offer of employment to  Mr. Sánchez as its maintenance supervisor, an exempt position, which he accepted.  (Docket No. 54-13 & Docket No. 54-5, at 6:10-22.)  Mr. Sánchez started working for Unicco on

---

[1] Mr. Sánchez started working as an industrial mechanic and later worked as an electronic technician.  (Docket No. 54-2, at 2, ¶ 5 & Docket No. 54-4.)

CIVIL 07-1880 (DRD) (JA)                    3

June 1, 2005.[2]  (Docket No. 54-5, at 6:18-22 & at 7:1-3.)  From June 1, 2005 to December 14, 2007, Unicco paid all of Mr. Sánchez' salary benefits, and vacation sick/leave benefits.[3]  (Docket No. 54-5, at 8:1-25, at 9:1-10 & Docket No. 54-18.)

On November 15, 2007, Chesebrough informed Unicco that it was terminating the Facility Services Agreement for the Las Piedras site.  (Docket No. 54-29 & Docket No. 54-30.)  On November 30, 2007, Mr. Sánchez as well as every employee who was assigned to the Las Piedras site was informed by Unicco of the termination of its business relationship with Chesebrough.  (Docket No. 54-31.)  They were told by Joe Yozzi, a Unicco managerial employee, that Chesebrough had decided to change the contractor company that provided the maintenance services.  (Docket No. 54-5, at 16:23-25; at 17:1-25; at 18:1-25.)  Also, during a meeting with Mr. Yozzi, Mr. Sánchez was given a letter wherein he was informed that all the employees of Unicco assigned to Chesebrough would be laid off.  (Id. at 16:23-25 & 18:16-21.)

─────────────────

[2] At that time, plaintiff acknowledged receipt of Unicco's employee handbook, and as well of its policies, and he received training regarding Unicco's employment policies; among others.  (Docket Nos. 54-14, 54-15, 54-16; 54-17; and Docket No. 54-6, at 5:11-25, at 6:1-25, at 7:10-25, at 8:17-25, at 9:1-17, and at 10:1-9.)

[3] Plaintiff's W-2 forms for the years 2005 to 2007, reflected that plaintiff's only employer and source of income after May 2005, came from Unicco.  After May 2005, plaintiff never received any salary or other income from the Chesebrough.  (Docket No. 54-5, at 19:12-25, at 20:1-6 & Docket Nos. 54-20, 54-21 & 54-22.)

CIVIL 07-1880 (DRD) (JA)                    4

In December 2007, the Chesebrough's parent company, Conopco, Inc. d/b/a Unilever, an affiliate of Unilever de Puerto Rico, entered into a new contractual relationship with Johnson Controls, Inc. ("Johnson Controls"), to provide nationwide facilities maintenance services to a number of different sites in the United States, including the Las Piedras site.  (Docket No. 54-26; Docket No. 54-27 & Docket No. 54-29.)  This action was part of a nationwide initiative by Unilever in the United States for further lowering operating costs.  (Docket No. 54-29.)

On September 20, 2007, Mr. Sánchez and his wife Mrs. López filed a complaint against the Chesebrough for violations of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 et seq.  (Docket No. 1.) On January 9, 2008, the complaint was amended.  (Docket No. 16.)  The complaint also contains various claims under the laws of Puerto Rico.  (Id.)  In essence, plaintiffs allege that Mr. Sánchez was harassed by the defendant Chesebrough because of his age.  (Id. at 4, ¶ 8.)  Also, they claim that Chesebrough retaliated against Mr. Sánchez up until his termination after he filed a complaint before the Equal Employment Opportunity Commission ("EEOC").  (Id. at 5-6, ¶¶ 16-21.)

CIVIL 07-1880 (DRD) (JA)                    5

On September 28, 2009, the defendant filed its motion for summary judgment and supporting memorandum of law.  (Docket No. 52.)  The defendant argues that judgment has to be entered on its behalf because:  (a) Unicco was Mr. Sánchez' employer; (b) Mr. Sánchez was terminated from his employment because his employer Unicco no longer had a contractual relationship with Chesebrough; (c) Chesebrough did not affect the terms and conditions of Mr. Sánchez' employment with Unicco and it did not take any adverse action against Mr. Sánchez.  (Id. at 2-3.)  The defendant's motion was opposed by plaintiffs on November 13, 2009.  (Docket No. 63.)  Plaintiffs contend that the defendant's allegations are incorrect because both Unicco and Chesebrough were Mr. Sánchez' "joint employer," and as a result Chesebrough had control over the terms and conditions of Mr. Sánchez' employment.  (Id. at 1 & 5.)

On December 9, 2009, the defendant replied to plaintiffs' opposition to summary judgment.  (Docket No. 68.)  The defendant argues that plaintiffs' opposing statement of uncontested facts relies on hearsay, contradictory, conlcusory and self serving statements, and violates the anti-ferret rule.  (Id. at 1 & 3.)  The defendant claims that Radamés Rivera's sworn statement is replete of hearsay evidence.  (Id. at 2.)  Also, according to the defendant the e-mails attached by plaintiffs are inadmissable because they have not been authenticated.  (Id. at 4.)  On February 10, 2010 a sur-reply was filed by plaintiffs.  (Docket No.

CIVIL 07-1880 (DRD) (JA)                    6

84.)  In their motion, plaintiffs contend that Mr. Rivera's sworn statement does not contain hearsay evidence.  (Id. at 2.)  Plaintiffs claim that the statements made by Mr. Rivera are based on his personal knowledge.  (Id.)  As for the e-mails, plaintiffs argue that they are going to be authenticated during trial even though their veracity and validity has not been questioned.  (Id.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The intention of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

CIVIL 07-1880 (DRD) (JA)                    7

the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson. Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment."). The nonmoving party must produce "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)); see also López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000).

"A genuine issue exists when there is evidence sufficient to support rational resolution of the point in favor of either party." Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party. . . . " Burke v. Town of Walpole, 405 F.3d 66, 75 (1st Cir. 2005) (quoting United States v. One Parcel of Real Prop., 960 F.2d at 204).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue

CIVIL 07-1880 (DRD) (JA)                    8

for trial.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).   However, a moving party "may move for summary judgment 'with or without supporting affidavits.'"  Id. at 323 (quoting Rules 56(a) and (b)).   "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); see also Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)) ("[the court] must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.").

III.  ANALYSIS

1. Evidentiary Issues

A. Hearsay Statements

The defendant requests that Mr. Rivera's sworn statement be stricken because it contains inadmissible hearsay statements.  (Docket No. 68, at 4.) Plaintiffs, however,  claim that Mr. Rivera has personal knowledge of each and every factual statement made in the sworn statement.  (Docket No. 84, at 2.) Rule 56(e) of the Federal Rules of Civil Procedure provides, in the pertinent part, that:

> A supporting or opposing affidavit must be made on personal  knowledge,  set  out  facts  that  would  be

CIVIL 07-1880 (DRD) (JA)                    9

> admissible in evidence, and show that the affiant is
> competent to testify on the matters stated.

Fed. R. Civ. P. 56(e).  "Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment." S.E.C. v. Ficken, 546 F.3d 45, 53 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  Courts must apply this rule "to each segment of an affidavit, not to the affidavit as a whole." Pérez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001) (citing Akin v. Q-L Invs., Inc., 959 F.2d 521, 531 (5th Cir. 1992)).  Thus, only the portions of an affidavit that contain hearsay evidence will be disregarded.  "In conducting this tamisage, personal knowledge is the touchstone." Pérez v. Volvo Car Corp., 247 F.3d at 316.  "This 'requisite [of] personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise.'" Livick v. The Gillette Co., 524 F.3d 24, 28 (quoting Pérez v. Volvo Car Corp., 247 F.3d at 316).  "While the line between facts and non-facts often seems blurry, courts nonetheless must strive to plot it." Pérez v. Volvo Car Corp., 247 F.3d at 316. (citing Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989)).  "To the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient." Bibiloni Del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 165 (D.P.R.

CIVIL 07-1880 (DRD) (JA)                    10

2009) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53).

A review of Mr. Rivera's sworn statement reveals that it contains statements made by William Ocasio to him.  (Docket No. 61-9.)  Mr. Rivera does not have any personal knowledge as to the observations made by Mr. Ocasio and the events recounted by him.  Setterlund v. Potter, 597 F. Supp. 2d 167, 173 (D. Mass. 2008).   Furthermore, plaintiffs failed to show that Mr. Ocasio had personal knowledge of the facts asserted in Mr. Rivera's statement.  27 Charles Alan Wright and Victor James Gold, Federal Practice & Procedure § 6026 (2d ed.)  Thus, Mr. Rivera's sworn statement should not be considered on summary judgment since it contains inadmissable hearsay statements.  Bennett v. Saint-Gobain Corp., 507 F.3d 23, 28-29 (1st Cir. 2007).      B.  Authentication

The defendant further requests that the e-mails allegedly exchanged between Mr. Ocasio and Mr. Yozzi be disregarded because they are incomplete and have not been authenticated.  (Docket No. 68, at 4.)  Plaintiffs argue that the e-mails are authentic and complete because they were created by the defendant's top officers.   (Docket No. 84, at 2.)  It is a well settled "that '[d]ocuments supporting or opposing summary judgment must be properly authenticated.'"  Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d 202, 210 (D.P.R. 2009) (quoting Rivera Maldonado v. Hosp. Alejandro Otero López, 614 F. Supp. 2d 181, 185 n.1

CIVIL 07-1880 (DRD) (JA)                    11

(D.P.R. 2009) (quoting Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (citing Fed. R. Civ. P. Rule 56(e)).  Under Federal Rule of Evidence 901(a), the burden rests on the proponent of documentary evidence to provide "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).  Electronic communications or "[e]-mails can be authenticated by their authorship.  . . . [Also,] [a]dditional data such as the address that an e-mail bears, the use of the "reply" function to generate the address of the original sender, the content of the information included in the e-mail and other circumstances can suffice."  2 Kenneth S. Broun, McCormick on Evidence, § 227 (6th ed. 2006) (footnote omitted).

A view of the e-mails exchanged between Mr. Ocasio and Mr. Yozzi show the e-mail addresses of the original senders, and that they were sent and received from Unicco's e-mail system.  This data would be sufficient to make a finding of authenticity.  However, the e-mails should not be relied upon because they are incomplete.  First, the e-mails do not include the complete history of the conversations between Mr. Ocasio and Mr. Yozzi.  Exhibit 4 is numbered at the bottom as page 1 while Exhibit 5 is numbered as page 6.  (Docket No. 61-7, at 1 & Docket No. 61-8.)  Therefore, four pages of electronic messages appear to have been left out.  Second, the origin of the attachments included in Exhibit 4 is undetermined.  (Docket No. 61-7.)  Nowhere is it mentioned in Exhibit 4 that the

CIVIL 07-1880 (DRD) (JA)                12

documents attached were sent to or received by either Mr. Ocasio or Mr. Yozzi.
(Id.)  Exhibit 5 does make reference to an attachment but it is not included.
(Docket No. 61-8.)  Based on the foregoing, the e-mails should not be considered
on summary judgment.

    2.  The Anti-Ferret Rule

    According to the defendant, contested facts 4, 6, 9, 13, 15, 17, 20, 28, 29
and 31 from plaintiffs' opposing statement have to be stricken because they
violate the anti-ferret rule.  (Docket No. 68, at 3.)

    Local Rule 56 requires that a party opposing a motion for summary
judgment include a separate, short, and concise statement admitting, denying or
qualifying each fact set out by the moving party.  Local Rules of the United States
District Court for the District of P.R., Rule 56(c); see Morales v. A.C. Orssleff's
EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28
(1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R.
1997); see also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st
Cir. 2001).  "The opposing statement shall admit, deny or qualify the facts by
reference to each numbered paragraph of the moving party's statement of
material facts and unless a fact is admitted, shall support each denial or
qualification by a record citation . . . . "  Local Rules 56(c).  Also, Local Rule 56
states that "[a]n assertion of fact set forth in a statement of material facts shall

CIVIL 07-1880 (DRD) (JA)                    13

be followed by a citation to the specific page or paragraph of identified record material supporting the assertion.  The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."  Local Rule 56(e).  "It is insufficient to merely refer to an exhibit in general.  Rather, parties must make specific reference to pages and/or paragraphs.  Under the anti-ferret doctrine, the Court will not search through the entire record in an attempt to discern to what parties are referring in their briefs."  Dávila v. Potter, 550 F. Supp. 2d 234, 239 (D.P.R. 2007).  Local Rule 56 is intended "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." Carreras v. Sajo, García & Partners, 596 F.3d 25, 31 (1st Cir. 2010) (quoting CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008)).  "It prevents parties from 'improperly shift[ing] the burden of organizing the evidence presented in a given case to the district court.'" Carreras v. Sajo, García & Partners, 596 F.3d at 31 (quoting Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007)).

Plaintiffs failed to file a "short, and concise statement admitting, denying or qualifying" facts 4, 6, 9, 13, 15, 17, 20, 28, 29 and 31 as required by Local Rule 56(c).  Without a short and concise statement the court would have to ferret through the record, "study all the attached documents, and carefully scrutinize all

CIVIL 07-1880 (DRD) (JA)                14

the depositions lurking genuine issues of material facts." <u>Carmona-Ríos v.</u> <u>Aramark Corp.</u>, 139 F. Supp. 2d 210, 215 (D.P.R. 2001) (quoting <u>Domínguez v.</u> <u>Eli Lilly & Co.</u>, 958 F. Supp. at 727).   Consequently, as a result of plaintiffs' violation of the anti-ferret rule, the aforementioned contested facts should be stricken from the record.

   3.  Plaintiffs' Causes of Action

   A.  Joint Employer Doctrine

   The defendant argues that plaintiffs cannot assert discrimination claims against Chesebrough unless they can show that Chesebrough was Mr. Sánchez' employer.  (Docket No. 52, at 6.)  It claims that Unicco, not Chesebrough, was Mr. Sánchez' employer because Unicco paid all of Mr. Sánchez's salary, benefits, and vacation/sick leave benefits.  (<u>Id.</u> at 7.)  Also, the defendant claims that Mr. Sánchez submitted his expense reports to Unicco for reimbursement, had a credit card issued by Unicco and used a uniform provided by Unicco.  (<u>Id.</u>)

   According to the defendant, Unicco was the one who supervised, evaluated, disciplined, and established salary increases and prepared/ directed Mr. Sánchez' work assignments at the Chesebrough site.  (<u>Id.</u>)  The defendant claims that Chesebrough's only involvement was through Juan Rodríguez who acted as a liaison with Unicco to coordinate job orders at the site pursuant to the terms of the Facility Services Agreement.  (<u>Id.</u>)  Mr. Sánchez, the defendant claims, was

CIVIL 07-1880 (DRD) (JA)                    15

supervised by Luis Calderón and Mr. Ocasio, both managerial employees of Unicco and site managers under the facility services agreement.  (Id. at 7-8.)

Plaintiffs contend that Unicco and Chesebrough were Mr. Sánchez' joint employer.  (Docket No. 63.)  According to plaintiffs, Mr. Sánchez worked at Chesebrough from 1985 up until his termination in 2007.  (Id. at 2.)  Plaintiffs claim that Eduardo Pagán, a general manager of Chesebrough, informed Mr. Sánchez that Chesebrough required from Unicco that Mr. Sánchez had to continue working at the Chesebrough site with the same benefits.  (Id.)  Also, plaintiffs claim that Mr. Pagán told Mr. Sánchez that Chesebrough had demanded and required from Unicco that Unicco had to employ Mr. Sánchez, otherwise, Chesebrough would not enter into a service contract with Unicco.  (Id.) Furthermore, plaintiffs claim that Mr. Sánchez was being supervised by Chesebrough managers, Saúl Díaz, Mr. Pagán and Mr. Rodríguez. (Id.) Plaintiffs claim that Mr. Rodríguez was responsible for approving salary increases and disciplining Unicco employees, including Mr. Sánchez.  (Id. at 3.)  In addition, plaintiffs claim that Mr. Rodríguez was responsible for Mr. Sánchez' demotion and termination.  (Id.)  Also, according to plaintiffs, Mr. Rodríguez participated in the termination of the Facility Services Agreement with Unicco and in the selection of employees from Unicco that were going to continue to work at Chesebrough plant through Johnson Controls.  (Id.)

CIVIL 07-1880 (DRD) (JA)                    16

"In order to establish liability under Title VII, plaintiff must present sufficient evidence to show that the discriminatory conduct at issue can be attributable to her employer." Acosta v. Harbor Holdings & Operations, Inc., 674 F. Supp. 2d 351, 370 (D.P.R. 2009). "Title VII liability attaches only in the event of a covered employment relationship." Id. (quoting Medina v. Adecco, 561 F. Supp. 2d 162, 176 (D.P.R. 2008)). Under the "joint employer" doctrine "two separate business enterprises can be treated as a single employer for the purposes of Title VII liability if there is an 'interrelation of operations, common management, centralized control of labor relations and common ownership.'" Santiago v. Lloyd, 33 F. Supp. 2d 99, 103 (D.P.R. 1998) (quoting Radio & Television Broad. Technicians v. Broad. Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965)).

To determine whether "a joint employment condition is present, the court must examine 'factors which include:  supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignment; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees.'" Acosta v. Harbor Holdings & Operations, Inc., 674 F. Supp. 2d at 371 (quoting Rivera-Vega v. ConAgra, Inc.,  70 F.3d 153, 163 (1st Cir. 1995); Rivas v. Fed. de Asoc. Pecuarias de P.R., 929 F.2d 814, 820 (1st Cir. 1991)).

CIVIL 07-1880 (DRD) (JA)                17

        With respect to the first factor in the joint employer doctrine analysis, the

evidence shows that Mr. Sánchez was supervised  by Unicco employees, Julio

Nieto, Mr. Calderón, and Mr. Ocasio.  (Docket No. 54-5, at 6, 13, 14 & 15.)

Although plaintiffs claim that Mr. Sánchez was supervised by Chesebrough

managers, Mr. Diaz, Mr. Pagán and Mr. Rodríguez, there is no evidence any of

these employees evaluated Mr. Sánchez's performance.  (Id. at 7 & 13.)  The

record only shows that Mr. Nieto and  Mr. Ocasio were the ones who evaluated Mr.

Sánchez.  (Id. at 9, 11 & 12.)

        As to the second factor, the evidence in the case does not support plaintiffs'

claim that the defendant had the authority to hire, fire, or discipline employees.

First, in 2005 after applying for a job, Mr. Sánchez started working for Unicco and

was no longer an employee of Chesebrough.  (Docket No. 54-4 & Docket No. 54-

5, at 5-6.)  Second, all Unicco employees, including Mr. Sánchez, stopped working

at the Las Piedras site after the contractual relationship between Chesebrough and

Unicco ended.  (Docket No. 54-30 & Docket No. 54-31.)  Third, while employed

by Unicco, Mr. Sánchez was only disciplined by Mr. Ocasio.  (Docket No. 54-5, at

27-28 & Docket No. 54-19.)

         With respect to the third factor, the evidence does not show that

Chesebrough had the authority to promulgate work rules, conditions of

employment, and work assignments.  Even though Mr. Rodríguez acted as the

CIVIL 07-1880 (DRD) (JA)                  18

liaison between Unico and Chesebrough coordinating work orders and assignments, the evidence indicates that the power to promulgate work rules as well as the conditions of employment resided solely upon Unicco.  The Facility Services Agreement specified that Unicco employees were not to be treated as Chesebrough employees for any reasons including benefits plans, employment policies, disability laws, unemployment and workers compensation.  (Docket No. 54-9, at 5, ¶ 9.)  Furthermore, when Mr. Sánchez started working for Unicco he was given a copy of their manual for employees.  (Docket Nos. 54-14; 54-15; 54-16; 54-17 & Docket No. 54-6, at 5-10.)  Also, Mr. Sánchez received training on Unicco's employment policies.  (Id.)

Finally, the evidence as to the fifth factor shows that Unicco assumed responsibility for the payment of Mr. Sánchez' salary, benefits and taxes.[4] (Docket No. 54-5, at 7, 8, 19 & 20; Docket Nos. 54-20, 54-21 & 54-22.) Therefore, since there are no genuine issues of material facts as to factors one, two, three and five, and factors four and six remain neutral, it should be found that a joint employer relationship did not exist between Unicco and Chesebrough.

B.  ADEA Discrimination Claim

---

[4] The fourth factor in the analysis, which examines the participation in the collective bargaining agreement, and the sixth factor, which examines the authority over the number of employees, will not be evaluated because the parties did not submit any evidence regarding them.

CIVIL 07-1880 (DRD) (JA)                    19

In order to establish a claim under ADEA, "an employee must 'prove that he would not have been fired but for his age.'" Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (quoting Rivera-Aponte v. Restaurant Metropol # 3, Inc., 338 F.3d 9, 11 (1st Cir. 2003)).  When, as in this case, there is no direct evidence of discrimination, the McDonnell Douglas burden-shifting analysis applies. Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)). "Under this analysis, a plaintiff establishes a *prima facie* claim of age discrimination by showing that: (1) he was at least 40 years old; (2) he met the employer's legitimate job performance expectations; (3) he experienced an adverse employment action; and (4) the employer had a continuing need for the services provided previously by the plaintiff." Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d at 11.  "Once [p]laintiff has met its burden, the burden shifts to [d]efendant to articulate non discriminatory reasons for its actions." Rodríguez-Torres v. Gov't Dev. Bank of P.R., ____ F. Supp. 2d ____, 2010 WL 682938, at *8 (D.P.R. Feb. 23, 2010) (citing Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 54).  If the defendant meets its burden, then the plaintiff must show that the defendant's proffered reason is a mere pretext for the discrimination. Díaz-Figueroa v. Ricoh P.R., Inc., 661 F. Supp. 2d 140, 153 (D.P.R. 2009) (citing González v. El Día, Inc., 304 F.3d 63, 70 (1st Cir. 2002)).  This burden may be

CIVIL 07-1880 (DRD) (JA)              20

satisfied through either direct or circumstantial evidence, including statistics, derogatory comments, differential treatment in the workplace, and the use of a younger replacement.  <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 824 (1st Cir. 1991).

    In this case, the first element of the ADEA *prima facie* showing is satisfied because Mr. Sánchez was 43 years old at the time of his termination.  (Docket No. 63, at 6.)  As  for  the second element, since it is not alleged that Mr. Sánchez was terminated because of a deficiency in his performance it can be inferred that Mr. Sánchez met his employer's job expectations, whether the emplower was Unicco or Chesebrough.  With regard to the third element, plaintiffs claim, among other things, that  Chesebrough through its officers, Mr. Rodríguez and Mr. Hernández, were responsible for Mr. Sánchez' termination from Unicco, and for Johnson Control's decision not to hire Mr. Sánchez to continue to work at Chesebrough.  (<u>Id.</u> at 20.)  Finally, according to plaintiffs the fourth element is satisfied because after Mr. Sánchez was terminated, other Unicco employees remained working at Unilever through Johnson Controls.  (<u>Id.</u> at 10.)

    The defendant argues that even if plaintiffs are able to establish a *prima facie* case for age discrimination, it is undisputable that Mr. Sánchez was not terminated because of his age but rather as a result of the termination of the Facility Services Agreement between Chesebrough and Unicco.  (Docket No. 52,

CIVIL 07-1880 (DRD) (JA)                21

at 11-12.)   The defendant claims that the decision to switch maintenance companies was applicable to all Unicco employees at the Chesebrough site, regardless of their age. (Id. at 12.) Thus, the defendant claims that Mr. Sánchez' termination came as a result of a business decision and therefore he was never subjected to any adverse employment action by Chesebrough.  (Id.)

Plaintiffs counter that the defendant's reason for terminating Mr. Sánchez was pre-textual because the employees who either remained working at Unilever or were reassigned to other Unicco service contracts were younger than Mr. Sánchez. (Docket No. 63, at 21.) Also, according to plaintiffs Mr. Rodríguez was responsible for ordering that Mr. Sánchez' salary increase be the  lowest, in comparison with the salary increases of the other employees who were younger and less experienced than him. (Id. at 22.) Furthermore, plaintiffs claim that Mr. Rodríguez made discriminatory and derogatory comments to Mr. Sánchez about his age.  (Id. at 22.)

Plaintiffs have establish a *prima facie* case for age discrimination.  However, they failed to show that the defendant's proffered reason for the termination of Mr. Sánchez is a mere pretext for the discrimination.  First, the evidence used by plaintiffs to support their proposition is unreliable.  According to Mr. Sánchez' unsworn statement and Unicco's answers to plaintiffs' first request to admit facts, the employees from Unicco that remained working at Unilever after the services

CIVIL 07-1880 (DRD) (JA)                    22

contract expired were:  Mr. Ocasio, Gilberto Ramos, Reynaldo López, Juan C. Medina, Nixa Silva, Luis García, Anthony Figueroa, Rafael Bermúdez, Sonia Pérez, Tito R. García, Yoner Rivera, Ricardo López, Luis Andino, Sergio L. González, Alberto E. Nadal, and Víctor J. Santiago.  (Docket No. 61-3, at 2, ¶ 7 & Docket No. 61-10.)  The problem with Mr. Sánchez' proposition is that it fails to provide the basis for his knowledge.  Ramírez-Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 82 (1st Cir. 2005); Marina Águila v. Den Caribbean, Inc., 490 F. Supp. 2d 244, 246 (D.P.R. 2007).  As a result, Mr. Sánchez' statements are inadmissable for summary judgment purposes.  Id.  Of the 18 employees that supposedly remained working at Unilever or were relocated to other facilities only Mr. Andino is mentioned in Unicco's answer to plaintiffs' first request to admit facts.  (Docket No. 61-10, at 5.)  However, nowhere does it say that Mr. Andino remained working at Unilever after the service contract expired. Second, the alleged discriminatory comments regarding Mr. Sánchez' age were made by Mr. Ocasio, a managerial employee of Unicco.  (Docket No. 54-5, at 30-32 & Docket No. 54-25, at 9-13.)  Also, the alleged comment that Mr. Rodríguez made to Mr. Sánchez about his age during a meeting is simply a stray remark that is insufficient to establish discriminatory animus.  Rivera-Aponte v. Restaurant Metropol #3, Inc., 338 F.3d at 12 (quoting González v. El Día, Inc., 304 F.3d at 69).  Third, there is no evidence on the record that shows that younger and less

CIVIL 07-1880 (DRD) (JA)                23

experienced employees were treated preferably.   According to plaintiffs Mr. Sánchez' salary increase was lower when compared to the salary increases of employees who were younger and less experience than him.   Plaintiffs claim that Mr. Sánchez' salary increase was 42 cents while the salary increases for Mr. Velázquez, Mr. González, Mr. Figueroa, Mr. Rosario and Mr. Rivera ranged between $2.00 and $3.00.   To support their position plaintiffs rely on Mr. Sánchez' unsworn testimony and the e-mails allegedly exchanged between Mr. Ocasio and Mr. Yozzi.   However, these documents are unreliable.   First, as discussed in part 1 subsection (B) the e-mails are incomplete.   Second, like Mr. Sánchez' testimony regarding the employees of Unicco that remained working at Unilever,   Mr. Sánchez' statements related to the salary increases do not explain the basis for his knowledge.    Therefore, plaintiffs' ADEA discrimination claim should be dismissed with prejudice.

C.  ADEA Hostile Work Environment Claim

Plaintiffs allege that the defendant through its actions created intolerable working conditions as well as a hostile working environment.   (Docket No. 16, at 6, ¶ 26.)   To establish a hostile work environment claim, a plaintiff must show that: "(1) [he is] a member of a protected class; (2) [he was] subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of

CIVIL 07-1880 (DRD) (JA)                    24

[his] employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and that the plaintiff did in fact perceive it to be so; and (6) some basis for employer liability has been established." Mojica v. El Conquistador Resort & Golden Door Spa, _____ F. Supp. 2d _____, 2010 WL 1992575, at *15 (D.P.R. May 13, 2010) (citing Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008)).  Also, "when assessing whether a workplace is a hostile environment, this Court must 'look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance.'" Matías-Cardona v. Verizon Wireless P.R., Inc., 610 F. Supp. 2d 157, 170 (D.P.R. 2009) (quoting Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001)); Crespo-Vargas v. United States Gov't, 573 F. Supp. 2d 532, 551-52 (D.P.R. 2008), aff'd, No. 08-2461, slip op. (1st Cir. Mar. 29, 2010).  "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment." Mojica v. El Conquistador Resort & Golden Door Spa, 2010 WL 1992575, at *15 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

CIVIL 07-1880 (DRD) (JA)                25

It is uncontested that at the time the alleged harassment started Mr. Sánchez was a member of the protected class. Besides the alleged discriminatory comments made by Mr. Rodríguez, plaintiffs believe the defendant harassed Mr. Sánchez because he was the oldest of his family members working at the Las Piedras site. (Docket No. 16, at 4, ¶¶ 7-8.) Also, plaintiffs allege that Mr. Sánchez was harassed because he was accused of having a conflict of interest for performing electric jobs outside working hours, using the company's credit card to buy items for his personal use, using the company van for personal use, and taking merchandise from the company with the help of his wife. (Id. at 4-5, ¶¶ 9-12.) Plaintiffs claim that the reason why Mr. Sánchez was harassed by the defendant was because of his age. (Docket No. 63, at 18-19.) They also claim that as a result of the defendant's actions Mr. Sánchez became severely depressed. (Id. at 19.) According to plaintiffs any reasonable person in Mr. Sánchez's position would find that the defendant's actions were abusive and offensive. (Id.) Plaintiffs claim that despite Mr. Sánchez's numerous complaints the defendant did not take any remedial or corrective action. (Id. 20.)

The defendant contends that Mr. Sánchez was not subject to a hostile work environment. (Docket No. 52, at 13.) According to the defendant, Mr. Sánchez stated during the taking of his deposition that he was not the oldest of his family members that worked at the Las Piedras site because his brother and mother-in-

CIVIL 07-1880 (DRD) (JA)                26

law were older than him.  (Id. at 14; Docket No. 54-5, at 37 & Docket No. 54-6, at 2.)  As to plaintiffs' claim that Mr. Sánchez was accused for having a conflict of interest and taking merchandise from the company, the defendant states that during the deposition of Mr. Sánchez' wife she testified that she never heard any comments being made about said accusations.  (Docket No. 52, at 14; Docket No. 54-32, at 7.)  Furthermore, the defendant claims that Mr. Sánchez' wife admitted that she was never investigated or accused by anyone at Chesebrough.  (Id.)  The defendant also claims that the alleged age related incidents that plaintiffs describe as "harassment" and "persecution" are only based on isolated comments that are not sufficiently sever or pervasive to support an actionable hostile work environment claim under ADEA.  (Docket No. 52, at 14.)

        Viewing the record in the light most favorable to plaintiffs and drawing all inferences in his favor, I cannot find that the workplace at Chesebrough "[wa]s permeated with discriminatory intimidation, ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [Mr. Sanchez'] employment and create an abusive working environment." Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d at 57 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002)).  Assuming that the incidents in which plaintiffs claim Mr. Sánchez was harassed were in fact based on his age, there is no indication said conduct was physically threatening nor that it interfered with his work

CIVIL 07-1880 (DRD) (JA)                27

performance.  As to the comments that Mr. Rodríguez allegedly made to Mr.

Sánchez regarding his age, these are simply stray remarks which are  insufficient

to establish discriminatory animus.  There is no evidence on the record that might

show that comments about Mr. Sánchez' age were made on a persistent basis.

It is important to note that more severe conduct than the actions alleged here by

plaintiffs has been found to not rise to the level of a hostile work environment.

See Marrero v. Schindler Elevator Corp., 494 F. Supp. 2d 102, 110 (D.P.R. 2007)

(finding that calling Plaintiff "viejo," "viejito," and "viejo pendejo" "on a daily

basis" are not sufficient for a hostile work environment claim).  As such, I find that

plaintiffs' ADEA hostile work environment claim should be dismissed with

prejudice.

        D.  ADEA Retaliation Claim

        "In addition to prohibiting age discrimination, the ADEA also protects

individuals who invoke the statute's protections."   Ramírez-Rodríguez v.

Boehringer Ingelheim Pharm., Inc., 425 F.3d at 84 (citing 29 U.S.C. § 623(d)).

In this case, even though plaintiffs' ADEA claim failed they are not precluded from

asserting a retaliation cause of action.  Machin v. Leo Burnett, Inc., 376 F. Supp.

2d 188, 206 (D.P.R. 2005) (quoting Soileau v. Guilford of Me., Inc., 105 F.3d 12,

16 (1st Cir. 1997)); see also Wright v. CompUSA, Inc., 352 F.3d 472, 477 (1st

Cir. 2003); Vicenty-Martell v. Estado Libre Asociado de P.R., 48 F. Supp. 2d 81,

CIVIL 07-1880 (DRD) (JA)                    28

89 (D.P.R. 1999).  However, since there is no direct evidence of retaliation, the McDonnell Douglas burden-shifting analysis is utilized.  Cruz-Claudio v. García Trucking Serv., Inc., 639 F. Supp. 2d 198, 209 (D.P.R. 2009); see Ramírez-Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d at 84-85.  Thus, plaintiffs have to show that Mr. Sanchez (1) engaged in ADEA-protected conduct, (2) experienced an adverse employment action, and (3) that a casual connection between the protected conduct and the adverse employment action existed. Martinez-Jordan v. Baxter Healthcare Corp., 608 F. Supp. 2d 224, 243 (D.P.R. 2009).  "The First Circuit has stated, in determining what constitutes an "adverse" employment action, that: 'the employer must either 1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or 2) withhold from the employee an accouterment of the employment responsibility, say, by failing to follow a customary practice of considering her for a promotion after a particular period of service." DeCaire v. Gonzales, 474 F. Supp. 2d 241, 251 (D. Mass. 2007), vacated on other grounds by DeCaire v. Mukasey, 530 F.3d 1 (1st Cir. 2008), (quoting Blackie v. Maine, 75 F.3d 716, 725 (1st Cir.1996)).

       Plaintiffs claim the defendant retaliated against Mr. Sánchez after he filed a complaint before EEOC.  (Docket No. 63, at 13.)  According to plaintiffs, after filing the complaint the defendant retaliated against Mr. Sánchez by not assigning

CIVIL 07-1880 (DRD) (JA)                    29

him any functions and duties, demoting and replacing him, making comments that he was stealing from the company, giving him the lowest salary increase, not offering him a job after the services contract ended, making derogatory comments, and terminating him from his employment.  (Id. at 14-16.)  Plaintiffs claim that a casual connection exists between Mr. Sánchez' protected activity and the  adverse employment action taken against him.  (Id. at 17.)  They claim that immediately after Mr. Sánchez filed the complaint the harassment by Mr. Rodríguez continued and increased.  (Id.)  Also, plaintiffs claim that the defendant was responsible for Mr. Sánchez' termination and Johnson Control's decision not to hire him.  (Id.)

Although it states that it is uncontested that Mr. Sánchez engaged in a ADEA protected conduct, the defendant contends that plaintiffs failed to establish that Mr. Sánchez suffered an adverse employment action by Chesebrough and that a causal connection between the filing of the EEOC charge and his subsequent termination exists.  (Docket No. 52, at 16.)  The defendant also states that Mr. Sánchez' termination would have still occurred irrespective of the EEOC charge because its parent company Unilever negotiated a master contract with Johnson Controls to provide nationwide facilities maintenance services to a number of different sites in the United States, including the Chesebrough site in Las Piedras, Puerto Rico.  (Id.)  Thus, the defendant argues that if there is someone

CIVIL 07-1880 (DRD) (JA)                    30

responsible for Mr. Sánchez' termination it has to be Unicco and not Chesebrough. (Id.)

Plaintiffs have failed to establish a *prima facie* case for retaliation under the ADEA because no adverse employment actions were taken by the defendant against Mr. Sánchez.  Also, plaintiffs' claim that Mr. Sánchez was not assigned any functions and duties is merely conclusory.  Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (quoting Ingram v. Brink's, Inc., 414 F.3d 222, 229 (1st Cir. 2005) (holding that a "summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation.")).   No evidence was offered by plaintiffs to determine whether or not Mr. Sánchez was divested of any significant responsibilities.  See Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 50 (1st Cir. 1999).  Plaintiffs do not specify what were the functions and duties that allegedly were not assigned to Mr. Sánchez. Likewise, plaintiffs' claim that Mr. Sánchez was replaced and demoted is equally unsupported.   Nowhere do plaintiffs allege that Mr. Sanchez' salary and/or benefits were reduced, affected or altered as a result of the demotion.  Thus, it cannot be held that Mr. Sánchez' employment was materially affected in any way. As to the comments allegedly made by the defendant to Mr. Sánchez, besides being negative, they are not by themselves adverse employments actions.  See Torres-Alman v. Verizon Wireless P.R., Inc., 522 F. Supp. 2d 367, 399 (D.P.R.

CIVIL 07-1880 (DRD) (JA)                    31

2007). Also, because plaintiffs' claim is for retaliation and not disparate impact their allegation regarding Mr. Sánchez's salary increase cannot be regarded as an adverse employment action.  See Smith v. City of Jackson, Miss., 544 U.S. 228, 241 (2005).  Additionally, plaintiffs have provided no evidence  showing that the defendant had a legal obligation to either offer Mr. Sánchez a job or allow him to continue working at Unilever through Johnson Controls after the Facility Services Agreement ended.  With regard to Mr. Sánchez' termination, even though it is an adverse employment action, there is no evidence to indicate that it is a result of the filing of the EEOC charge.  The record shows that the reason why Mr. Sánchez stopped working at Chesebrough was because the Facility Services Agreement had been terminated.  Furthermore, there is no temporal proximity between the filing of the EEOC charge and Mr. Sánchez' termination that "may give rise to an inference of causal connection." Delanoy v. Aerotek, Inc., 614 F. Supp. 2d 200, 210 (D.P.R. 2009).  Four months transpired between the filing of the EEOC charge and Mr. Sánchez' termination.  See Ramírez-Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d at 85 (holding that even though plaintiff was terminated, instead of being reprimanded, two months after filing an ADU complaint does not establish that the termination was causally linked to the complaint); Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (holding that a one month interval is sufficient to establish causation).  Therefore, it is

CIVIL 07-1880 (DRD) (JA)                32

clear that there is no causal connection between the two events.   As such, plaintiffs' ADEA retaliation claim should be dismissed with prejudice.

E.  Compensatory Damages under ADEA

Plaintiffs claim that as a result of the defendant's actions Mr. Sánchez is entitled to compensatory damages.  (Docket No. 16, at 7, ¶ 29.)  The defendant, however, contends that plaintiffs' claim for compensatory damages is not available under the ADEA.  (Docket No. 52, at 18.)  It is well settled that compensatory damages for emotional distress, pain and suffering are not recoverable under ADEA.  Rivera-Tirado v. Autoridad de Energía Eléctrica, 663 F. Supp. 2d 36, 42 (D.P.R. 2009) (quoting Collazo v. Nicholson, 535 F.3d at 44-45).   The only damages that may be recoverable under the statute are "unpaid wages and overtime." Rivera-Tirado v. Autoridad de Energía Eléctrica, 663 F. Supp. 2d at 43 (quoting Collazo v. Nicholson, 535 F.3d at 45). Thus, plaintiffs' claim for damages under the ADEA for mental anguish and emotional distress should be dismissed with prejudice.

F.  Title VII Sexual Harassment Claim

"There are two types of actionable sexual harassment claims:  hostile work environment and *quid pro quo.*  The latter requires a showing that a supervisor or employee uses his/her 'superior position to extract sexual favors from a subordinate employee, and if denied those favors, retaliates by taking action

CIVIL 07-1880 (DRD) (JA)                    33

adversely affecting the subordinate's employment.'" Pérez-Cordero v. Wal-Mart

P.R., Inc., 646 F. Supp. 2d 214, 219 (D.P.R. 2009) (quoting O'Rourke v. City of

Providence, 235 F.3d 713, 728 (1st Cir. 2001)).  In this case, the *quid pro quo*

form of harassment is not implicated.  Plaintiffs only claim that Mr. Sánchez was

sexually harassed by Mr. Ocasio.  (Docket No. 16, at 5, ¶ 13.)  According to

plaintiffs Mr. Ocasio left sexually charged and offensive messages in Mr. Sánchez'

voice mail.  (Id.)  Also, plaintiffs claim that Mr. Ocasio authored and promoted a

sexually charged atmosphere by sexually harassing other employees and making

sexually charge comments on a constant basis.  (Id. ¶ 14.)

         In order "[t]o prove a claim of hostile work environment sexual harassment,

a plaintiff must demonstrate:  (1) that she (or he) is a member of a protected

class; (2) that she [(or he)] was subjected to unwelcome sexual harassment; (3)

that the harassment was based upon sex; (4) that the harassment was sufficiently

severe or pervasive so as to alter the conditions of plaintiff's employment and

create an abusive work environment; (5) that sexually objectionable conduct was

both objectively and subjectively offensive, such that a reasonable person would

find it hostile or abusive and the victim in fact did perceive it to be so; and (6)

that some basis for employer liability has been established." Forrest v. Brinker

Int'l Payroll Co., 511 F.3d 225, 228 (1st Cir. 2007) (citing Crowley v. L.L. Bean,

Inc., 303 F.3d 387, 395 (1st Cir. 2002)).

CIVIL 07-1880 (DRD) (JA)                    34

The defendant argues that plaintiffs' sexual harassment claim has to be dismissed because plaintiffs do not set forth any facts or allegations of sex discrimination or sexual harassment against Chesebrough nor against any of its employees.  (Docket No. 52, at 19.)  Plaintiffs do not contest the defendant's arguments.  "Proving employer liability depends in the first instance upon whether the alleged harassment is caused by a co-employee of the victim or a supervisor." White v. N.H. Dep't of Corr., 221 F.3d 254, 261 (1st Cir. 2000).  Here, the defendant cannot be held liable for Mr. Ocasio's actions since he is neither an employee nor a supervisor of Chesebrough.  Mr. Ocasio was at all times a managerial employee of Unicco.  Therefore, plaintiffs' Title VII sexual harassment claim should be dismissed with prejudice.

G.  Puerto Rico Law Claims

Plaintiffs filed supplemental claims pursuant to Puerto Rico Act No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29,  § 146 et seq.; Puerto Rico Act No.  17 of April 22, 1988, P.R. Laws Ann. tit. 29, § 155 et seq.; Puerto Rico Act  No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29, § 1321 et seq.; and for slander under Puerto Rico's Libel and Slander Act of February 19, 1902, P.R. Laws Ann. tit. 32, § 3142 et seq.; Puerto Rico Act No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194 et seq.; and Article 1802 of the Puerto Rico Civil, P.R. Laws Ann. tit. 31, § 5141.  (Docket Nos. 1 & 16.)  Since all of plaintiffs' federal claims

CIVIL 07-1880 (DRD) (JA)                35

against the defendant should be dismissed, the court should not exercise supplemental jurisdiction over the Puerto Rico law claims which "posit novel and complex issues of state law." Szendrey-Ramos v. First BanCorp, 512 F. Supp. 2d 81, 88 (D.P.R. 2007); see Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d at 217; Meléndez v. Autogermana, Inc., 606 F. Supp. 2d 189, 198-99 (D.P.R. 2009).    Accordingly, plaintiffs' state law claims should be dismissed without prejudice. Cao v. Puerto Rico,  525 F.3d 112, 116 (1st Cir. 2008) (holding that when state law claims are dismissed without prejudice, a  plaintiff is free to assert them in the appropriate state forum).

IV.  CONCLUSION

For the reasons set forth above, it is recommended that the defendant's motion for summary judgment be GRANTED.  As such, plaintiffs' federal claims should be DISMISSED WITH PREJUDICE.  Also, plaintiffs' supplemental state law claims should be DISMISSED WITHOUT PREJUDICE.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes

CIVIL 07-1880 (DRD) (JA)                    36

further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

       At San Juan, Puerto Rico, this 6th day of July, 2010.

                              S/ JUSTO ARENAS
                    Chief United States Magistrate Judge