UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AGAPITO SANCHEZ-MEDINA, et al.,

Plaintiff(s),

UNICCO SERVICE COMPANY, et al.,

Defendant(s).

Civil No. 07-1880 (DRD)

**OMNIBUS OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS, DOCKET ENTRIES NO. 95, 98**

Pending before the Court are: (a) *Defendant's Chesebrough Ponds' Motion For Summary Judgment And Memorandum Of Law In Support Thereof*, and the *Statement of Uncontested Material Facts,* Docket No. 52, Docket entries No. 52 and 54; (b) *Plaintiffs' Responses And Objections To Chesebrough Proposed Statement of Uncontested Facts,* and *Plaintiffs' Memorandum Of Law In Support Of Their Opposition To The Motion For Summary Judgment* filed by plaintiffs, Docket entries No. 61 and 63; (c) *Defendant Chesebrough Ponds' Manufacturing Company's Reply To Plaintiffs' Opposition To Motion For Summary Judgment*, Docket No. 68; (d) *Plaintiff's Sur-Reply Brief To Unilever's Reply Brief*, Docket No. 84. These motions were referred to the Chief, Magistrate Judge Arenas (hereinafter "Magistrate Judge") for a report and recommendation, *see Amended Order Of Referral*, Docket No. 91. A *Report and Recommendation* was entered on July 6, 2010, Docket No. 98.

The following motions are also pending before the Court: (a) *Motion To Strike Portion Of Plaintiff Agapito Sánchez-Medina's Deposition Testimony* filed by defendant Chesebrough Ponds' Manufacturing Company a/k/a Unilever de Puerto Rico, Docket No. 55, and (b) *Opposition To Chesebrough "Motion To Strike Portions Of Plaintiff's Sánchez Medina Deposition Testimony*,

Docket No. 65.   These motions were referred to the Magistrate Judge for a report and recommendation, *see Amended Order Of Referral*, Docket No. 91.  A *Report and Recommendation* was entered on May 20, 2010, Docket No. 95.

**Standard of Review**

The district court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation.  28 U.S.C. § 636(b)(1)(B); Rule 72(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."); Local Civil Rule 72(a) of the Local Rules of the United States District Court for the District of Puerto Rico ("L.Civ.R.").  *See Mathews v. Weber*, 423 U.S. 261 (1976).  An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within fourteen (14) days after being served a copy thereof.  *See* Fed.R.Civ.P. 72(d).  Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within fourteen days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

(Emphasis ours).

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F. 2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985).  Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court, and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F. 2d

2

22, 30-31 (1st Cir. 1992). *See also Sands v. Ridefilm Corp.*, 212 F.3d 657, 663 (1st Cir. 2000); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-151 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate [judge]'s report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir. 1988); *Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a *de novo* review of an argument never raised"). *See also United States v. Valencia*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980). Hence, the standard for review of an objected report and recommendation is *de novo* review of those matters properly objected. *See Borden v. Secretary of H.H.S.*, 836 F.2d at 6.

In the event that no objections are timely filed to the Magistrate Judge's *Report and Recommendation*, then the Court in order to accept the unopposed *Report and  Recommendation*, needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir. 1996)(*en banc*)(extending the deferential "plain error" standard of review to the unobjected  legal conclusions of a magistrate judge); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)(*en banc*)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras-Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R. 2001)("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate [Judge]'s recommendation was clearly erroneous")(adopting the Advisory Committee note regarding

3

Fed.R.Civ.P 72(b)); *Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa. 1990)("when no objections are filed, the district court need only review the record for plain error").

In the instant case, the *Report and Recommendation* entered on May 20, 2010, Docket No. 95 (hereinafter "*Report and Recommendation I*"), stands unobjected.  Hence, the Court will review the *Report and Recommendation I* under the "plain error" doctrine.  The record shows, however, that the *Report and Recommendation* entered on July 6, 2010, Docket No. 98 (hereinafter "*Report and Recommendation II*"), was timely objected, *see Defendant Chesebrough Ponds' Objections To Section "G" Of Magistrate Judge's Report And Recommendation*, Docket No. 99.  Hence, the Court will review *de novo* only Section "G" of the *Report and Recommendation II*, and the unobjected parts of said report will be reviewed under the "plain error" doctrine.

After a careful analysis, the Court finds no "plain error" in the *Report and Recommendation I* and *Report and Recommendation II*, except Section "G," and agrees with the Magistrate Judge's conclusions and recommendations, as supplemented herein.

### Factual and Procedural Background

In a nut shell, this is an action under the Age Discrimination In Employment Act ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 *et seq.*  Plaintiffs also seek relief under Puerto Rico law, based on the district court's exercise of supplemental jurisdiction.

Plaintiff Sánchez was employed by Chesebrough on January 28, 1985, as an industrial mechanic and later as an electronic technician.  *Report and Recommendation II*, Docket No. 98, pages 1-2.  In May 2005, Chesebrough informed all of its employees that in order to lower costs, it would conduct a reorganization of the company.  *Report and Recommendation II*, Docket No. 98,

4

page 2.  The company's reorganization plan became effective on June 1, 2005, and consequently, several employees were laid off, amongst them plaintiff herein.  *Id.*  "Laid-off employees like Mr. Sánchez were given the option of: (1) participating in the recruitment process with Unicco, or (2) continuing employment with Chesebrough but at a lower level, occupying vacant positions."  *Report and Recommendation II*, Docket No. 98, page 2.  Sánchez completed its employment application with Unicco, on May 4, 2005, and on May 18, 2005, Unicco extended an employment offer to Sánchez, which he accepted.  *Id.*  Sánchez worked with Unicco from June 1, 2005 through December 14, 2007.  *Report and Recommendation II*, Docket No. 98, page 3.  "Unicco paid all of Mr. Sánchez' salary benefits, and vacation, sick/leave benefits" during that period of time.  *Id.*  "On November 15, 2007, Chesebrough informed Unicco that it was terminating the Facility Services Agreement for Las Piedras site."  *Id.*  "On November 30, 2007, Mr. Sánchez as well as every employee who was assigned to the Las Piedras site was informed by Unicco of the termination of its business relationship with Chesebrough."  *Id.*  The reason provided was that "Chesebrough had decided to change the contractor company that provided the maintenance services."  *Id.*  On that same date, all the employees of Unicco who were assigned to Las Piedras site received lay-off letters.  *Id.*  "In December 2007, the Chesebrough's parent company, Conopco, Inc. d/b/a Unilever, an affiliate of Unilever de Puerto Rico, entered into a new contractual relationship with Johnson Controls, Inc. ("Johnson Controls"), to provide nationwide facilities maintenance services to a number of different sites in the United States, including the Las Piedras site."  *Report and Recommendation II*, Docket No. 98, page 4.  "This action was part of the a nationwide initiative by Unilever in the United States for further lowering operating costs."  *Id.*

       This action ensued on September 7, 2007.  The complaint was later amended on January 9,

5

2008, Docket No. 16.

The record shows that plaintiffs and Unicco jointly moved for the dismissal with prejudice of this action, as the parties had reached a private settlement agreement, Docket No. 92. Partial Judgment was entered on May 17, 2010, Docket entries No. 93and 94. Hence, the only dispositive motion that remains pending before the Court is Chesebrough's motion for summary judgment, Docket No. 52, and Chesebrough's motion to strike, Docket No. 55.

### Analysis

### *Report and Recommendation I*.

The record shows that the *Report and Recommendation I* stands unobjected. After a careful review of the record and in absence of plain error, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference, the *Report and Recommendation I*, Docket No. 95, to the instant Order. The issue referred to the Magistrate Judge was the *Motion To Strike*, Docket No. 55, filed by defendant Chesebrough Ponds' Manufacturing Company a/k/a Unilever de Puerto Rico (hereinafter "Chesebrough"), and plaintiffs' opposition thereto, Docket No. 65.

Chesebrough moved the Court to strike and/or disregard portions of plaintiff Agapito Sánchez Medina's (hereinafter "Sánchez") testimony of January 30, 2009, related to his claim of age discrimination, on the grounds that "it is contradictory." *Report and Recommendation I*, Docket No. 95, page 1. Chesebrough alleges that Sánchez' testimony of January 30, 2009 is contradictory to his prior testimony of January 26, 2009. Generally, the contradiction lies on the fact that during the taking of the deposition of January 26, 2009, Sánchez was asked the basis for his age discrimination claim, and "he answered that his former supervisor Juan Rodríguez ("Mr. Rodríguez") allegedly made only one comment and/or remark regarding his age during a

meeting." *Report and Recommendation I*, Docket No. 95, page 2.  When the deposition resumed on January 30, 2009, Sánchez asked to be allowed to make a clarification to his testimony of January 26, 2009.  Sánchez "stated that Mr. Rodríguez made comments and/or remarks about his age at all times in different areas of the company, whenever Mr. Rodríguez would see him." *Report and Recommendation I*, Docket No. 95, page 2.  "On the other hand, plaintiff contends that although the he used the word "once" he never meant that Mr. Rodríguez, in only one occasion, during one meeting, made discriminatory comments about his age." *Id.*  "Plaintiff claims that what he really meant was that whenever he and Mr. Rodríguez met, Mr. Rodríguez would make discriminatory comments about his age." *Id.*

The Court agrees with the Magistrate Judge's analysis, which we incorporate herein:

> It is clear that neither the questions made by the defendant were ambiguous nor were plaintiff's answers unclear. On the first day of the deposition plaintiff was simply asked to explain the facts on which he based his age discrimination claim. Plaintiff answered that Mr. Rodríguez only once made discriminatory comments about his age during a meeting in his office. It was not until the deposition was resumed that plaintiff clarified that Mr. Rodríguez would make discriminatory  comments to him about his age every time he saw him. However, nowhere does plaintiff offer an explanation regarding the inconsistencies in his testimony. He contends that such an explanation is not needed because it was never requested by the defendant during the taking of the deposition. Plaintiff is incorrect. Not only does plaintiff have to offer an explanation of why his testimony changed, but it also has to be satisfactory. *See Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d at 122. A mere assertion, much like the one made in this case by plaintiff, of what was really intended after a question is answered does not qualify as a satisfactory explanation. Therefore, plaintiff's January 30, [2009], deposition testimony regarding his age discrimination claim against the defendant has to be disregarded inasmuch as it contradicts his prior deposition testimony without satisfactory explanation. *See, e.g., Meuser v. Fed. Express Corp.*, 564 F.3d 507, 515 (1st Cir. 2009); *Vélez v. Marriott PR Mgmt., Inc.*, 590 F. Supp. 2d 235, 249 (D.P.R.

2008).

*Report and Recommendation I*, Docket No. 95, pages 8-9.

The Court agrees *in toto* with the Magistrate Judge's conclusion that "an issue of fact cannot be created 'by filing a "sham affidavit," that is, one that contradicts prior deposition testimony.' *Rivera-Rocca v. RG Mortgage Corp.*, 535 F.Supp.2d 276, 286 n.5 (D.P.R. 2008); *see Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726, at 30-31 (2d ed. Supp. 1994)." *Report and Recommendation I*, Docket No. 95, page 2. *See also Thore v. Howe, et al.*, 466 F.3d 173, 186 n.7 (1st Cir. 2006). In *Thore*, the Court held that "...where a witness gives a clear and unambiguous answer, he may not defeat summary judgment with a contradictory affidavit unless he gives a satisfactory explanation of why the testimony has changed" (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)), and *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806-807 (1999). In *Cleveland*, the Court held that "[t]he lower courts, . . . have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."

For the reasons set forth above, the Court adopts *in toto* the Magistrate Judge's *Report and Recommendation I*, Docket No. 95. Hence, Chesebrough's motion to strike, Docket No. 55, is granted.

### Report and Recommendation II.

The record shows that the *Report and Recommendation II* stands unobjected, as to the

findings of fact and conclusions of law reached by the Magistrate Judge.  Hence, this Court will review the recommendation made by the Magistrate Judge under the "plain error" doctrine.  The Court is cognizant of the timely objection filed by Chesebrough limited only as to the recommendation of the Magistrate Judge under Section "G" of the *Report and Recommendation II*, Docket No. 98, pages 34-35.  The Court will review this specific objection *de novo*.

After a careful review of the record and in absence of plain error, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference, the *Report and Recommendation I*, Docket No. 95, to the instant Order.  The analysis made by the Magistrate Judge is very thorough, and the Court finds it unnecessary to "write at length" to repeat what is "a first-rate work product."  *See Lawton v. State Mut. Life Assu. Co. of Am.*, 101 F. 3d 218, 220 (1st Cir. 1996); and *In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F. 2d 36, 38 (1st Cir. 1993).  Hence, the Court will only limit its task to include the conclusions and recommendations made by the Magistrate Judge, as the Court finds no "plain error" in the analysis, and fully agrees with the recommendations made by the Magistrate Judge.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Report and Recommendation II*, Docket No. 98, pages 6-7, (citations omitted).  We will follow the same order of the analysis made by the Magistrate Judge:

1.      Evidentiary Issues.

        A.      Hearsay Statement.

                "Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."  (Citations omitted).  *Report and Recommendation II*, Docket No. 98, page 9, and the collection of cases cited therein.  "Courts must apply this rule 'to each segment of

9

an affidavit, not to the affidavit as a whole.'" (Citations omitted). *Id.* "Thus, only the portions of an affidavit that contain hearsay evidence will be disregarded." (Citations omitted). *Id.* "While the line between facts and non-facts often seems blurry, courts nonetheless must strive to plot it." (Citations omitted). *Id.* "To the extent the affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient." (Citations omitted). *Id.*

Based on the above referenced legal analysis, the Magistrate Judge found that Chesebrough's request to strike Mr. Rivera's sworn statement, as it contains inadmissible hearsay arguments, "should not be considered on summary judgment since it contains inadmissible hearsay statements. *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 28-29 (1st Cir. 2007)." *Report and Recommendation II*, Docket No. 98, page 10. The Court agrees, and hereby adopts the recommendation of the Magistrate Judge.

B.     Authentication.

"It is well settled 'that "[d]ocuments supporting or opposing summary judgment must be properly authenticated."'" (Citations omitted). *Report and Recommendation II*, Docket No. 98, page 10, and the collection of cases cited therein. "Under Federal Rule of Evidence 901(a), the burden rests on the proponent of documentary evidence to provide 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Report and Recommendation II*, Docket No. 98, page 11. "Electronic communications or '[e]-mails can be authenticated by their authorship . . . . [Also,] [a]dditional data such as the address of the original sender the content of the information included in the e-mail and other circumstances can suffice."

10

(Citation omitted).  *Report and Recommendation II*, Docket No. 98, page 11.

Based on the above applicable law, and the analysis made by the Magistrate

Judge, the Court agrees that the e-mails allegedly exchanged between Messrs. Ocasio and Yozzi

"should not be considered on summary judgment."[1]  *Report and Recommendation II*, Docket No. 98,

page 12.   The Court agrees and adopts the recommendation made by the Magistrate Judge.

2.     The Anti-Ferret Rule.

Chesebrough alleges that "contested facts 4, 6, 9, 13, 15, 17, 20, 28, 29 and 31 from

plaintiffs' opposing statement have to be stricken because they violate the anti-ferret rule."  *Report*

*and Recommendation II*, Docket No. 98, page 12.   After a thorough analysis, the Magistrate Judge

found that "[p]laintiffs failed to file a 'short, and concise statement admitting, denying or qualifying"

facts 4, 6, 9, 13, 15, 17, 20, 28, 29 and 31 as requested by Local Rule 56(c)."   *Report and*

*Recommendation II*, Docket No. 98, page 13.   "Without a short and concise statement the court

would have to ferret through the record, 'study all the attached documents, and carefully scrutinize

all the depositions lurking genuine issues of material facts.'"  (Citations omitted).   *Id.*

"Consequently, as a result of plaintiffs' violation of the anti-ferret rule, the aforementioned contested

---

[1]

"A view of the e-mails exchanged between Mr. Ocasio and Mr. Yozzi show the
e-mail addresses of the original senders, and that they were sent and received
from Unicco's e-mail system. This data would be sufficient to make a finding of
authenticity. However, the e-mails should not be relied upon because they are
incomplete. First, the e-mails do not include the complete history of the
conversations between Mr. Ocasio and Mr. Yozzi. Exhibit 4 is numbered at the
bottom as page 1 while Exhibit 5 is numbered as page 6. (Docket No. 61-7, at 1
& Docket No. 61-8.) Therefore, four pages of electronic messages appear to have
been left out. Second, the origin of the attachments included in Exhibit 4 is
undetermined. (Docket No. 61-7.) Nowhere is it mentioned in Exhibit 4 that the documents attached were sent to or
received by either Mr. Ocasio or Mr. Yozzi. (Id.) Exhibit 5 does make reference to an attachment but it is not included.
(Docket No. 61-8). Based on the foregoing, the e-mails should not be considered on summary judgment." *See Report*
*and Recommendation II*, Docket No. 98, pages 11-12.

11

facts should be stricken from the record." *Report and Recommendation II*, Docket No. 98, page 14. The Court agrees and adopts the recommendation made by the Magistrate Judge.

      3.      Plaintiffs' Causes of Action.

            A.      Joint Employer Doctrine.

Chesebrough alleges that "plaintiffs cannot assert discrimination claims against Chesebrough unless they can show that Chesebrough was Mr. Sánchez' employer." *Report and Recommendation II*, Docket No. 98, page 14. Chesebrough further alleges that "Unicco, not Chesebrough, was Mr. Sánchez' employer because Unicco paid all of Mr. Sánchez' salary, benefits, and vacation/sick leave benefits." *Id.* "Also, the defendant [Chesebrough] claims that Mr. Sánchez submitted his expense reports to Unicco for reimbursement, had a credit card issued by Unicco and used a uniform provided by Unicco." *Id.* Sánchez, however, claims that Unicco and Chesebrough were his joint employer. *Report and Recommendation II*, Docket No. 98, page 15.

The Magistrate Judge found:

> "In order to establish liability under Title VII, plaintiff must present sufficient evidence to show that the discriminatory conduct at issue can be attributable to her employer." *Acosta v. Harbor Holdings & Operations, Inc.*, 674 F. Supp. 2d 351, 370 (D.P.R. 2009). "Title VII liability attaches only in the event of a covered employment relationship." Id. (quoting *Medina v. Adecco*, 561 F. Supp. 2d 162, 176 (D.P.R. 2008)). Under the "joint employer" doctrine "two separate business enterprises can be treated as a single employer for the purposes of Title VII liability if there is an 'interrelation of operations, common management, centralized control of labor relations and common ownership.'" *Santiago v. Lloyd*, 33 F. Supp. 2d 99, 103 (D.P.R. 1998) (quoting *Radio & Television Broad. Technicians v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965)).
>
> To determine whether "a joint employment condition is present, the court must examine 'factors which include: supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignment;

participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees.'" *Acosta v. Harbor Holdings & Operations, Inc.*, 674 F. Supp. 2d at 371 (quoting *Rivera-Vega v. ConAgra, Inc.*, 70 F.3d 153, 163 (1st Cir. 1995); *Rivas v. Fed. de Asoc. Pecuarias de P.R.*, 929 F.2d 814, 820 (1st Cir. 1991)).

*Report and Recommendation II*, Docket No. 98, page 16.

After a thorough analysis of the all the factors enumerated above when considering whether there is a joint employment condition, the Magistrate Judge found that "there are no genuine issues of material facts as to factors one, two, three, and five, and factors four and six remain neutral, it should be found that a joint employer relationship did not exist between Unicco and Chesebrough." *Report and Recommendation II*, Docket No. 98, page 18.  The Court agrees and adopts the recommendation made by the Magistrate Judge.

> B.      ADEA Discrimination Claim.

"In order to establish a claim under ADEA, 'an employee must "prove that he would not have been fired but for his age."'" (Citations omitted).  *Report and Recommendation II*, Docket No. 98, page 19, and the cases cited therein.  *See also Gross v. FBL Financial Services, Inc.*, ___ U.S. ___, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), and the collection of cases cited therein. "When, as in this case, there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting analysis applies." *Id.*  Under the *McDonnell Douglas*, the plaintiff needs to establish a *prima facie* case, by showing that: "(1) he was at least 40 years old; (2) he met the employer's legitimate job performance expectations; (3) he experience an adverse employment action; and (4) the employer had a continuing need for the services provided previously by the plaintiff." *Report and Recommendation II*, Docket No. 98, page 19, and the cases cited therein.  "Once [p]laintiff has met

13

his burden, the burden shift to [d]efendant to articulate non discriminatory reasons for its actions." *Report and Recommendation II*, Docket No. 98, page 19, and the cases cited therein. "If the defendant meets its burden, then the plaintiff must show that the defendant's proffered reason is a mere pretext for the discrimination." *Report and Recommendation II*, Docket No. 98, page 19, and the cases cited therein.

After a thorough analysis made by the Magistrate Judge when considering whether or not age was a factor on Sánchez' termination, the Magistrate Judge recommended that plaintiffs' ADEA discrimination claim be dismissed with prejudice. *Report and Recommendation II*, Docket No. 98, page 23. The Magistrate Judge found that, although Sánchez had established a *prima facie* case for age discrimination, plaintiffs "failed to show that the defendant's proffered reason [the termination of the Facility Services Agreement between Chesebrough and Unicco] for the termination of Mr. Sánchez is a mere pretext for the discrimination." *Report and Recommendation II*, Docket No. 98, page 21. "First, the evidence used by plaintiffs to support their proposition is unreliable." *Id.* "The problem with Mr. Sánchez' proposition is that it fails to provide the basis for his knowledge." *Report and Recommendation II*, Docket No. 98, page 22, and the cases cited therein. "Second, the alleged discriminatory comments regarding Mr. Sánchez' age were made by Mr. Ocasio, a managerial employee of Unicco." *Id.* "Also, the alleged comment that Mr. Rodríguez made to Mr. Sánchez about his age during a meeting is simply a stray remark that is insufficient to establish discriminatory animus." *Id.* "Third, there is no evidence on the record that shows that younger and less experience employees were treated preferably." *Report and Recommendation II*, Docket No. 98, pages 22-23.

Plaintiffs also alleged that his salary increase was lower than other employees'

14

salary increases.  In support of their claim, plaintiffs presented several e-mails exchanged between Messrs. Ocasio and Yozzi, as well as Sánchez' unsworn testimony, which the Magistrate Judge found unreliable.  *Report and Recommendation II*, Docket No. 98, page 23.  The Magistrate Judge found that the e-mails submitted were incomplete, and the unsworn testimony of Sánchez, as to the employees that remained working at Unilever, and their salary increases "do not explain the basis for his [Sánchez] knowledge."  *Id.*  Hence, "plaintiffs' ADEA discrimination claim should be dismissed with prejudice."  *Id.*

The Court agrees and adopts the recommendation made by the Magistrate Judge.

        C.     ADEA Hostile Work Environment Claim.

When considering whether the conditions of the work environment are hostile, plaintiff must first establish that: "(1) [he is] a member of a protected class; (2) [he was] subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of [his] employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and that the plaintiff did in fact perceive it to be so; and (6) some basis for employer liability has been established."  (Citations omitted).  *Report and Recommendation II*, Docket No. 98, pages 23-24, and the cases cited therein.

Based upon a thorough review of all the evidence submitted, the Magistrate Judge concluded that Sánchez was not able to establish his hostile work environment claim. "Viewing the record in the light most favorable to plaintiffs and drawing all inferences in his favor, I cannot find that the workplace at Chesebrough '[wa]s permeated with discriminatory intimidation,

ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [Mr. Sánchez'] employment and create an abusive working environment." *Report and Recommendation II*, Docket No. 98, page 26, and the cases cited therein. "Assuming that the incidents in which plaintiffs claim Mr. Sánchez was harassed were in fact based on his age, there is no indication said conduct was physically threatening nor that it interfered with his work performance." *Report and Recommendation II*, Docket No. 98, pages 26-27. "As to the comments that Mr. Rodríguez allegedly made to Mr. Sánchez regarding his age, these are simply stray remarks which are insufficient to establish discriminatory animus." *Report and Recommendation II*, Docket No. 98, page 27. "There is no evidence on the record that might show that comments about Mr. Sánchez' age were made on a persistent basis." *Id.* "It is important to note that more severe conduct than the actions alleged here by plaintiffs has been found to not rise to the level of a hostile work environment." *Report and Recommendation II*, Docket No. 98, page 27, and the cases cited therein. Hence, "plaintiffs' ADEA hostile work environment claim should be dismissed with prejudice." *Id.*

The Court agrees and adopts the recommendation of the Magistrate Judge.

D.      ADEA Retaliation Claim.

Even if the ADEA claim fails, plaintiffs may still assert a retaliation claim under the ADEA. *Report and Recommendation II*, Docket No. 98, page 27. When considering a retaliation claim, if there is no direct evidence of retaliation, then the *McDonnell Douglas* burden-shifting analysis is applied. *Id.* At pages 27-28. "Thus, plaintiffs have to show that Mr. Sánchez (1) engaged in ADEA-protected conduct, (2) experienced an adverse employment action, and (3) that a causal connection between the protected conduct and the adverse employment action existed."

16

*Report and Recommendation II*, Docket No. 98, page 28 and the cases cited therein.

             Plaintiffs allege that Chesebrough retaliated against Sánchez after he filed a complaint before the EEOC.  *Report and Recommendation II*, Docket No. 98, page 28.  Plaintiffs claim that Chesebrough stop assigning Sánchez "any functions and duties, demoting and replacing him, making comments that he was stealing from the company, giving him the lowest salary increase, not offering him a job after the services contract ended, making derogatory comments, and terminating him from his employment."  *Id.* at pages 28-29.  "Plaintiffs claim that a causal connection exists between Mr. Sánchez' protected activity and the adverse employment action taken against him."  *Report and Recommendation II*, Docket No. 98, page 29.  Chesebrough claims that plaintiffs failed to establish that Sánchez suffered an adverse employment action, and that a causal connection exists between the filing of the EEOC complaint and the subsequent termination of Sánchez.  *Id.*  Moreover, Chesebrough alleges that "Mr. Sánchez' termination would have still occurred irrespective of the EEOC charge because its parent company Unilever negotiated a master contract with Johnson Controls to provide nationwide facilities maintenance services to a number of different sited in the United States, including the Chesebrough site in Las Piedras, Puerto Rico."  *Id.*  Chesebrough further argues "that if there is someone responsible for Mr. Sánchez' termination it has to be Unicco and not Chesebrough."  *Id.* at pages 29-30.

             After a thorough analysis, the Magistrate Judge concluded that "[p]laintiffs have failed to establish a *prima facie* case for retaliation under the ADEA because no adverse employment actions were taken by the defendant against Mr. Sánchez."  *Report and Recommendation II*, Docket No. 98, page 30.  "Additionally, plaintiffs have provided no evidence showing that the defendant [Chesebrough] had a legal obligation to either offer Mr. Sánchez a job

or allow him to continue working at Unilever through Johnson Controls after the Facility Services Agreement ended." *Report and Recommendation II*, Docket No. 98, page 31. "With regard to Mr. Sánchez' termination, even though it is an adverse employment action, there is no evidence to indicate that it is a result of the filing of the EEOC charge." *Id.* "The record shows that the reason why Mr. Sánchez stopped working at Chesebrough was because the Facility Services Agreement had been terminated." *Id.* "Furthermore, there is no temporal proximity between the filing of the EEOC charge and Mr. Sánchez' termination." *Report and Recommendation II*, Docket No. 98, page 31, and the cases cited therein. The Magistrate Judge found that "it is clear that there is no causal connection between the two events." *Id.* at pages 31-32. "As such, plaintiffs' ADEA retaliation claim should be dismissed with prejudice." *Report and Recommendation II*, Docket No. 98, page 32.

The Court agrees and adopts the recommendation of the Magistrate Judge.

E.    Compensatory Damages under ADEA.

Plaintiffs claim compensatory damages under the ADEA. However, the ADEA does not provide for the recovery of compensatory damages, such as, emotional distress, pain and suffering. *Report and Recommendation II*, Docket No. 98, page 32. "The only damages that may be recoverable under the statute are 'unpaid wages and overtime.'" *Id.* In view of the analysis, the Magistrate Judge found that "plaintiffs' claim for damages under the ADEA for mental anguish and emotional distress should be dismissed with prejudice." *Id.*

The Court agrees and adopts the recommendation of the Magistrate Judge.

F.    Title VII Sexual Harassment Claim.

"There are two types of actionable sexual harassment claims: hostile work environment and *quid pro quo*." *Report and Recommendation II*, Docket No. 98, page 32. "The

18

latter requires a showing that a supervisor or employee uses his/her 'superior position to extract sexual favors from a subordinate employee, and if denied those favors, retaliates by taking action adversely affecting the subordinate's employment." *Report and Recommendation II*, Docket No. 98, pages 32-33, and the cases cited therein.  In the instant case, plaintiffs claim that Sánchez was only sexually harassed by Mr. Ocasio.  *Report and Recommendation II*, Docket No. 98, page 33. Plaintiffs further claim that Mr. Ocasio also harassed other employees.  *Id.*

The Magistrate Judge further found that in order to prove a claim of hostile work environment sexual harassment, a plaintiff must demonstrate: (1) that she (or he) is a member of a protected class; (2) that she [(or he)] was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or persuasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established."  *Report and Recommendation II*, Docket No. 98, page 33, and the cases cited therein.

After a thorough analysis, the Magistrate Judge found that Chesebrough "cannot be held liable for Mr. Ocasio's actions since he is neither an employee nor a supervisor of Chesebrough."  *Report and Recommendation II*, Docket No. 98, page 33.  "Mr. Ocasio was at all times a managerial employee of Unicco."  *Id.*  Based on this analysis, the Magistrate Judge found that "plaintiffs' Title VII sexual harassment claim should be dismissed with prejudice."

The Court agrees and adopts the recommendation of the Magistrate Judge. Hence, Chesebrough's motion for summary judgment, Docket No. 52, is granted.

19

G.      Puerto Rico Law Claims.

The Magistrate Judge recommended that the state law claims be dismissed without prejudice, citing *Cao v. Puerto Rico*, 525 F.3d 112, 116 (1st Cir. 2008).  The Court agrees with the recommendation made by the Magistrate Judge.  However, since this finding was objected by Chesebrough, we will review it *de novo*.

**Chesebrough's Objection to Section "G" of the *Report and Recommendation II*.**

Lastly, Chesebrough objects to the findings made by the Magistrate Judge under Section "G" of the *Report and Recommendation II*, Docket No. 99.  The Magistrate Judge found that "since all the plaintiffs' federal claims against the defendant should be dismissed, the court should not exercise supplemental jurisdiction over the Puerto Rico law claims which 'posit novel and complex issues of state law.'" *Szendry-Ramos v. First BanCorp.*, 512 F.Supp.2d 81, 88 (D.P.R 2007); *see Del Toro-Pacheco v. Pereira-Castillo*, 662 F.Supp.2d [202] at 217 [D.P.R. 2009]; *Meléndez v. Autogermana, Inc.*, 606 F.Supp2d 189, 198-99 (D.P.R. 2009)." *Report and Recommendation II*, Docket No. 95, pages 34-35.  "Accordingly, plaintiffs' state law claims should be dismissed without prejudice. *Cao v. Puerto Rico*, 525 F.3d 112, 116 (1st Cir. 2008) (holding that when state law claims are dismissed without prejudice, a plaintiff is free to assert them in the appropriate forum)." *Report and Recommendation II*, Docket No. 98, page 35.

Chesebrough alleges that the state law issues are not novel and complex issues, hence, the federal court may exercise its supplemental jurisdiction, Docket No. 99.  Chesebrough cited a collection of cases wherein the district court has exercised supplemental jurisdiction.  The Court is not persuaded by Chesebrough's argument, and briefly explains.

The Court exercise of supplemental jurisdiction in a case in which there is no cause of action

under a federal statute is **discretionary**.  (Emphasis ours).  *See* 28 U.S.C. § 1367(a)*.*  The Court may dismiss the State actions without prejudice should the federal causes of action be dismissed. *Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1175, 1176 (1ˢᵗ Cir. 1995).  *See also Ramos-Echevarría, et al. v. Pichis, Inc., et al.*, 698 F.Supp.2d 262, 274 (D.P.R.2010).  The Court will not exercise supplemental jurisdiction in the instant case, as there is no actionable cause of action under a federal statute, hence, the state claims may be dismissed.

### Conclusion

For the reasons stated above, this Court finds that there is **no plain error** in the Magistrate Judge's thorough *Reports and Recommendations*, Docket entries No. 95 and 98, hence, the *Reports and Recommendations* are hereby adopted *in toto*.[2]   Chesebrough's objection as to Section "G" of the *Report and Recommendation II*, Docket No. 99, is denied for the reasons set forth above. Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2010.

s/Daniel R. Domínguez
DANIEL R. DOMINGUEZ
U.S. District Judge

---

[2]
"The Court need not go further for it refuses to write at length to no other end than to hear its own words resonate as to the instances alleged as errors by plaintiff.

Where, as here, a [Magistrate Judge] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate."

*See Lawton v. State Mut. Life Assu. Co. of Am.*, 101 F. 3d 218, 220 (1st Cir. 1996); and *In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F. 2d 36, 38 (1st Cir. 1993).